[Cite as *State v. Wade*, 2012-Ohio-4255.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26275 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RYAN P. WADE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. CR 2011 10 2745 |

DECISION AND JOURNAL ENTRY

Dated: September 19, 2012

CARR, Judge.

{¶1} Appellant, State of Ohio, appeals the judgment of the Summit County Court of Common Pleas granting the motion to suppress filed by appellee, Ryan Wade. This Court reverses.

I.

{¶2} Wade was a passenger in a Ford Expedition that was stopped by the Akron police on October 4, 2011. Police subsequently discovered a gun lodged under the back seat where Wade had been sitting. On October 17, 2011, the Summit County Grand Jury indicted Wade on one count of carrying a concealed weapon, one count of receiving stolen property, and one count of improperly handling firearms in a motor vehicle. On November 4, 2011, Wade filed a motion to suppress all evidence obtained as a result of the traffic stop. After a hearing, the trial court issued an order granting the motion on January 17, 2012.

{¶3} The State filed a timely notice of appeal. On appeal, the State raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS.

{¶4} In its assignment of error, the State contends that the trial court erred in granting Wade's motion to suppress. This Court agrees.

{¶5} In support of its assignment of error, the State contends that the trial court's factual findings were not supported by competent, credible evidence. The State further contends that the officers were lawfully permitted to retrieve the gun and conduct a subsequent search for officer safety in the area of the vehicle where Wade had been observed making furtive movements.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. The reviewing court must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶7} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[A] search conducted without a warrant issued upon

probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶8} In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court recognized one general exception to the warrant requirement. The high court held that a police officer may conduct a brief, warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id*. at 24. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Evans*, 67 Ohio St.3d 405, 408 (1993), quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972).

{¶9} The court extended its precedent in *Terry* to protective searches of automobiles in *Michigan v. Long*, 463 U.S. 1032 (1983), holding that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id*. at 1049, citing *Terry* at 21. The *Long* court further stated that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id*. at 1049.

{¶10} In determining whether a protective search is justified, courts apply an objective standard to determine if the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief that the action taken was appropriate[.]'" *State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988). Applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976).

{¶11} Turning to the evidence presented at the suppression hearing, Officers Michael Stanar and Drew Reed of the Akron Police Department were working together in a marked cruiser on October 4, 2011. Both officers testified at the suppression hearing.

{¶12} Officer Stanar testified that he was riding as a passenger with Officer Reed in a marked cruiser when they noticed a white Ford Expedition with no front license plate. The officers initiated a traffic stop and noticed three individuals inside the SUV. Officer Stanar testified that as he approached the vehicle, he noticed the backseat passenger bending over and reaching down. Officer Stanar continued, "It appeared he was stuffing or making movements like he was stuffing something by his legs or maybe underneath his seat as I was approaching the vehicle on the right-hand side." Officer Reed approached the driver's side while Officer Stanar approached and made contact with both passengers. Officer Stanar testified that the officers obtained the identifications of the SUV's occupants and ran their identifications through the LEADS system. The officers discovered that the front seat passenger had an outstanding warrant, and Officer Stanar handcuffed her and placed her in the back of the cruiser.

{¶13} Officer Stanar then asked the back seat passenger, whom he identified in court as Wade, to step out of the vehicle. When Officer Stanar told Wade to put his hands on top of his

head, Wade was "hesitant" to do so. Officer Stanar testified that, "When [Wade] got his hands on his head, he kept wanting to go, kind of reach down towards his feet, so a couple times I had to kind of put his hands on his head and told him to interlock his fingers, and he was hesitant to do that. After two or three times he finally did." Officer Stanar did not discover anything on Wade when he patted him down for weapons. Officer Stanar then brought Wade to the area behind the SUV and in front of the cruiser and Officer Reed did the same with the driver. Officer Stanar then watched Wade and the driver while Officer Reed "looked in the area where Mr. Wade was seated." Officer Stanar testified that Officer Reed searched that area because that was where it appeared Wade had attempted to hide something "underneath the seat or somewhere on the floor area." When asked if the movements were the only reason for searching the back seat, Officer Stanar testified that, "Mr. Wade appeared he was trying to hide something. Working in law enforcement, when somebody makes those sorts of movements, they could be hiding a weapon; they could be hiding drugs, something illegal they don't want the police to find." After a weapon was found in the backseat, the officers read Wade his rights and placed him under arrest. The driver was permitted to return to the SUV because he had a valid license.

{¶14} On cross-examination, Officer Stanar testified that there was nobody in the SUV when Officer Reed searched the backseat, and that the backseat was the only portion of the vehicle that was searched. Officer Stanar also clarified that the officers had not received permission from the driver to search the SUV but they felt it was reasonable to look in the backseat of the vehicle based on the furtive movements they had observed upon initiating the stop. Officer Stanar further testified that he could not see Wade's hands as he made the movements when the officers were approaching the SUV.

{¶15} Officer Reed also testified on behalf of the State at the suppression hearing. Officer Reed testified that after initiating a traffic stop of the SUV because it did not have a front license plate, he noticed the vehicle's rear passenger "looking back" and he appeared to be "shoving something down." To Officer Reed, it appeared as though Wade was "trying to conceal something." When he approached the driver's side of the SUV, he noticed that the rear passenger looked "very nervous" and appeared to be "breathing heav[ily]." Officer Reed testified that Officer Stanar indicated that the front passenger had a warrant and proceeded to place her in the back of the cruiser. Officer Reed testified that Officer Stanar also had the backseat passenger, Wade, step out of the SUV. Officer Reed testified that, "[Officer Stanar had him step out of the vehicle to pat him down for weapons, and when we started to pat him down he looked, started reaching down, reaching down which obviously made us more on edge. And so he -- ended up patting him down and I looked -- whenever he opened the door and came out, I looked underneath like where he was shoving, and you could see [] the butt of a gun."

{¶16} Officer Reed clarified that he saw the gun when Wade was being patted down for weapons. Officer Reed observed the gun from outside the vehicle, explaining that he simply looked at the area where it had appeared Wade had shoved something. When he saw the gun, Officer Reed then told Officer Stanar to take Wade into custody. While both the front seat passenger and Wade were taken into custody, Officer Reed testified that the driver was allowed to drive away after receiving citations for not having a front license plate and not wearing a seat belt.

{¶17} On cross-examination, Officer Reed testified that the driver was still in the vehicle at the time that he observed the gun. When asked why the investigation report did not indicate that he observed the gun prior to the time that the search was initiated, Officer Reed

testified that he did note write the report. When presented with a copy of the report, Officer Reed testified, "It just says that I searched the area where he was seated." Like Officer Stanar, Officer Reed testified that he had not received consent to search the vehicle and that there was no need to tow the SUV.

{¶18} On re-direct examination, Officer Reed reiterated that he did not write the report discussed during cross-examination. When asked if the report accurately reflected his recollection of the events, Officer Reed testified that it had omitted the fact that he observed the gun before the vehicle was actually searched. Officer Reed further clarified that he found the gun underneath the rear passenger seat. On re-cross examination, Officer Reed again indicated that he saw the gun underneath the seat while Wade was being patted down.

{¶19} In granting the motion to suppress, the trial court highlighted that while Officer Reed testified that the butt of the gun was in plain view while Wade was being patted down and the driver remained in the vehicle, Officer Stanar testified Officer Reed discovered the gun during a search after Wade and the driver had been taken to the rear of the vehicle. After concluding that the State failed to meet its burden of proof that the gun was in plain view due to the fact that the police report seemed to substantiate Officer Stanar's testimony, the trial court relied on *Arizona v. Gant*, 556 U.S. 332 (2009), for the proposition that because neither Wade nor the driver had access to the vehicle at the time of the search, the concerns relating to safety and destruction of evidence were not applicable. The trial court further found that because there was no indication that any occupant of the vehicle was dangerous, a protective search as contemplated in *Long* was unnecessary.

{¶20} After a review of the record, we conclude that the trial court erred in granting Wade's motion to suppress. The parties do not dispute that the officers had authority to initiate

the initial traffic stop because the SUV was missing a front license plate. *See Dayton v. Erickson*, 76 Ohio St.3d 3, 11 (1996). As the officers approached the SUV, they observed Wade making movements consistent with someone attempting to conceal a weapon. Officer Reed testified that Wade was breathing heavily and appeared to be "very nervous" as the officer obtained the identifications of the SUV's occupants. Although some degree of nervousness during encounters with police is not uncommon, nervousness can be a factor to weigh in determining reasonable suspicion. *State v. Broughton*, 10th Dist. No. 11AP-620, 2012-Ohio-2526, ¶ 23. When the officers obtained the identifications of the passengers, they learned that the passenger in the front seat had an outstanding warrant. After arresting the front seat passenger and placing her in the back of the cruiser, Wade was asked to step out of the SUV. When Officer Stanar removed Wade removed from the vehicle, Wade was hesitant to comply with the request to place his hands on top of his head so Officer Stanar could pat him down for weapons. Under these circumstances where a passenger made movements consistent with concealing a weapon, exhibited excessive nervousness and hesitated to comply with police requests, and a fellow passenger had already been placed under arrest, it was reasonable for the officers to conduct a protective search for officer safety. *Long* at 1049; *see also Broughton* at ¶ 24, ¶ 37 (holding that a protective search was reasonable as a preventive measure when the occupants were temporarily removed from the vehicle and would ultimately be permitted to return). While the trial court's analysis focused on purported inconsistencies in the officers' testimony, there is no question that the circumstances in this matter differ from the facts the Supreme Court confronted in *Gant* in that there was no testimony here that Wade and the driver were arrested, handcuffed, and placed in the back of a cruiser at the time the search occurred. *Gant*, 556 U.S. at 335. In light of the facts available to the officers in this case, a limited search

of the area underneath Wade's seat was a reasonable protective measure given that Wade would have otherwise been permitted to return to the SUV at the conclusion of the traffic stop where he could have regained immediate control of a weapon. *Long* at 1049; *Broughton* at ¶ 37.

{¶21} It follows that the State's sole assignment of error is sustained.

III.

{¶22} The State's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

SCOTT A. RILLEY, Attorney at Law, for Appellee.