[Cite as *State v. Leneo*, 2025-Ohio-2582.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

v.

CHRISTOPHER LENEO

    Appellee

C.A. No.    31315

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2024-08-2565

DECISION AND JOURNAL ENTRY

Dated: July 23, 2025

---

STEVENSON, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals the judgment of the Summit County Court of Common Pleas granting a motion to suppress evidence filed by Appellee, Christopher Leneo. This Court reverses and remands.

I.

{¶2} Akron Police Officer Ryan Wood was on duty with his partner when he observed a vehicle driven by Mr. Leneo fail to properly use a turn signal and roll through a stop sign. The officers were travelling behind Mr. Leneo's vehicle in a marked police cruiser when the infractions were committed. After committing the infractions and before the police activated the cruiser's lights, Mr. Leneo "sped up to a high rate of speed[,]" "abruptly pulled a U-turn[,]" and "traveled the opposite direction of where [it was] initially."

{¶3} The officers ran the plate on Mr. Leneo's vehicle and activated the cruiser's lights to initiate a traffic stop. Mr. Leneo did not immediately pull over. He "continued [driving]

southbound . . . and pulled into a drive . . . ." It was later discovered that Mr. Leneo had pulled into his aunt's driveway.

{¶4}    Officer Wood testified that he had officer safety concerns as he approached Mr. Leneo's vehicle. It was dark, late at night, and they were in District Eight. District Eight has a "very high" frequency of crime that is "very disproportionate . . . to the other areas of the city." It is an area where there have been "several shootings" and where "[t]here's multiple known gang members' homes[.]"

{¶5}    Mr. Leneo's driving pattern also concerned Officer Wood. The officers were travelling in a marked police cruiser with "reflective badging on the side of the vehicle that states in big blue and yellow lettering Akron Police Department." The cruiser has "a push bar at the front and lights overhead on top of the bar." The roadway was "lit" with "multiple streetlights." Nonetheless, Mr. Leneo "hammer[ed] it and [took] off" and "abruptly pull[ed] a U-turn" when the officers were following him. Officer Wood did not know if there was going to be "a chase" or if "criminal activity [was] continuing[.]"

{¶6}    Officer Wood quickly approached Mr. Leneo's vehicle once it came to a stop in the driveway. It was dark outside and the windows on Mr. Leneo's vehicle were tinted. Officer Wood testified on direct examination at the suppression hearing:

> as I made the quick approach on the vehicle, I observed [Mr. Leneo] frantically and abruptly and furtively reaching in between the driver's side seat cushion which meets the center console; shoving, at that point, what I believed was a firearm because of the nature of it and the frantic state, shoving that down in between the seat.

Officer Wood explained on cross-examination that, with the use of the cruiser's spotlight and "high-range flashlights burning through the tinted windows[,]" he had "full view into [Mr. Leneo's] vehicle" and that he saw these "movements from the rear of the trunk as [he made his]

way around to the driver's side." He described his approach of the vehicle as "cumulative" and testified that he saw the furtive movements "from the time [he ran] up and mov[ed] around . . . ." Officer Wood testified that the observed "abrupt, quick, furtive" movements "were very apparent from [his] viewpoint, being elevated looking down into the car, because it obviously sits lower as a sedan."

{¶7} Mr. Leneo's driving pattern and furtive movements, in addition to the fact that it was late and night and they were in a high crime area, heightened Officer Wood's concern for officer safety. Believing that Mr. Leneo had a firearm in the car, Officer Wood testified that he was concerned because the vehicle was parked at his aunt's house, "family members [were] coming out[,]" there were only two officers present, and he did not "know how many people [were] in the home." He was concerned they were facing "much more than a simple traffic infraction" and that Mr. Leneo was "going to reach for a firearm[.]"

{¶8} Officer Wood acknowledged that, "by the time I [got] to the driver's side window . . . [Mr. Leneo's] hands [were] up." Mr. Leneo's hands were up "after the fact of [the observed] furtive movements."

{¶9} Officer Wood "immediately removed" an "extremely nervous" and "rapidly breathing" Mr. Leneo from his vehicle. Officer Wood promptly removed Mr. Leneo "to separate him from . . . that potential firearm . . . ."

{¶10} A *Terry* pat-down was conducted on Mr. Leneo. Mr. Leneo was advised that he was not under arrest and was taken to the back of the police cruiser while Officer Wood conducted a protective sweep of the vehicle. Officer Wood discovered a loaded firearm between the driver's seat cushion and center console. The firearm was found "exactly" where Officer Wood had seen Mr. Leneo "reaching frantically and abruptly" in the vehicle.

{¶11}  Mr. Leneo was charged with one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B)/(I), a felony of the fourth degree, with a forfeiture of weapon specification.  Mr. Leneo pleaded not guilty at his arraignment.

{¶12}  Mr. Leneo moved to suppress any evidence found in the search of his vehicle at the time of the traffic stop. He argued that the officers' search of his vehicle was unconstitutional under the Fourth Amendment to the United States Constitution.

{¶13}  The trial court held a hearing on Mr. Leneo's motion and issued a written decision granting the motion to suppress. The court found that "the search of [Mr.] Leneo's vehicle was not justified" and it granted his motion to suppress the evidence obtained in the search of the vehicle. The State appeals, asserting one assignment of error for this Court's review.

II.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN GRANTING [MR. LENEO'S] MOTION TO SUPPRESS.**

{¶14}  The State argues in his sole assignment of error that the trial court erred in granting Mr. Leneo's motion to suppress evidence. We agree.

## Standard of Review

{¶15}  A motion to suppress evidence "presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  "Accepting these facts as true, the appellate court must then independently determine, without deference to the

conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8,, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997). "We emphasize, however, that '[t]his Court must only accept the trial court's findings of fact if they are supported by competent, credible evidence.'" *State v. Carpenter*, 2023-Ohio-2014, ¶ 6 (9th Dist.), quoting *State v. Hendrix*, 2013-Ohio-2430, ¶ 14 (9th Dist.), quoting *State v. Figueroa*, 2010-Ohio-189, ¶ 20 (9th Dist.).

### Fourth Amendment

{¶16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Const., article I, §14. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶17} One exception to the warrant requirement is when an officer has a concern for the safety of the officer. In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the United States Supreme Court held that a police officer may conduct a brief, warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others[.]" *Id.* at 24. The court extended its precedent in *Terry* to protective searches of automobiles in *Michigan v. Long*, 463 U.S. 1032 (1983), holding that:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049, citing *Terry* at 21. The *Long* court further stated that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding the suspect." *Id.*

{¶18} In determining whether a protective search is justified, courts apply an objective standard to determine if the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief that the action taken was appropriate[.]'" *State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988), quoting *Terry* at 21-22. Applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir. 1976).

**Analysis**

{¶19} The State argues that the trial court's factual findings are not consistent with the facts in the record and are not supported by competent, credible evidence. It contends that applying the facts in the record to the applicable legal standard warrants a reversal of the trial court's judgment granting Mr. Leneo's motion to suppress evidence. Mr. Leneo argues that the record supports the trial court's factual findings that he was not evading the police and that he did not make furtive movements.

{¶20} Officer Wood was the only witness who testified at the suppression hearing. He testified that he was on patrol duty with his partner in District Eight when he observed Mr. Leneo commit traffic infractions. District Eight is a high crime area where gang members live and where there have been "several shootings[.]" It was late at night and dark outside.

{¶21} Officer Wood testified that he and his partner were travelling behind Mr. Leneo's vehicle in a marked Akron Police Department cruiser that included reflective badging, a push bar, and overhead lights. Although it was late at night and dark outside, the roadway was "lit" with "multiple streetlights." The officer believed Mr. Leneo should have known that police were following him before they activated their overhead lights as they were in a marked police cruiser and travelling on a well-lit street.

{¶22} After committing the traffic infractions and with the officers still behind him, Officer Wood testified that Mr. Leneo "hammer[ed] it and [took] off" and "abruptly pull[ed] a U-turn[.]" Officer Wood did not know if there was going to be "a chase" of Mr. Leneo's vehicle. He testified that Mr. Leneo did not immediately pull over after the officers activated the cruiser's overhead lights. Rather, he continued driving for a short distance before pulling into his aunt's driveway. Officer Wood testified that he does not believe the police cruiser had a dash camera installed at the time. The record does not include a dash camera video so there is no video depicting how Mr. Leneo was driving to contradict the officer's testimony.

{¶23} Officer Wood had officer safety concerns and he quickly approached Mr. Leneo's vehicle in a matter of seconds when it stopped. He testified that, although it was dark outside and Mr. Leneo's windows were tinted, he observed Mr. Leneo make "frantic[][,]" "abrupt[][,]" and "furtive[]" movements as he approached the vehicle. Officer Wood testified that he saw Mr. Leneo furtively reaching in between where the driver's seat cushion meets the center counsel when he was behind the vehicle. He was concerned that Mr. Leneo was concealing a firearm. Officer Wood discovered a loaded firearm between the driver's seat cushion and the center console when he conducted a protective sweep of the vehicle.

{¶24} In granting the motion to suppress, the trial court determined that "the body camera footage contradicts the statements of the officer[]" that he observed Mr. Leneo make "furtive movements . . . ." It decided that "[t]here is no credible evidence" to support Officer Wood's testimony that he observed Mr. Leneo make furtive movements as he approached the vehicle. Concluding that Mr. Leneo's hands were raised when Officer Wood arrived at the driver's side window, the court determined that "there was no additional evidence beyond the alleged furtive movements to support probable cause to search the vehicle." The court also determined that "the body camera footage does not support Officer Wood's testimony that [Mr.] Leneo was evading officers as he drove." The State challenges these factual findings on appeal.

{¶25} This Court has reviewed the record in this case and we conclude that we cannot accept the trial court's findings of fact as they are not based on competent, credible evidence. *See Carpenter*, 2023-Ohio-2014, at ¶ 6 (9th Dist.). The trial court relied on the factual finding that Officer Wood could not have observed Mr. Leneo make furtive movements as he approached the vehicle and it determined that the body worn camera contradicted the officer's testimony. This factual finding is not supported by the record.

{¶26} Officer Wood testified that, with the use of the cruiser's spotlight and his "high-range flashlight[][,]" he could see through the vehicle's rearview mirror. He testified that he saw Mr. Leneo making furtive movements and that he appeared to be shoving something between the front seat cushion and center console. The body camera footage that is part of the record shows Officer Wood shining a light into the vehicle. The light reflects off the vehicle's window in the video. The officer testified that he was "elevated looking down into the car[.]" While the glare reflecting off the vehicle's tinted windows *inhibits* the viewer from seeing down into the vehicle, it does not *contradict* the officer's testimony as found by the trial court. Thus, the only competent,

credible evidence regarding whether Mr. Leneo had engaged in furtive movements is the officer's testimony which is not contradicted by the video evidence, contrary to the court's findings. The trial court did not find that the officer was generally not credible but rather found that the video contradicted the officer's testimony. Because the video does not contradict the officer's testimony, the trial court's decision is not based on competent, credible evidence.

{¶27} The trial court also based its ruling on the factual finding that there is no evidence Mr. Leneo was evading the officers. A dash camera video was not introduced or admitted into evidence at the suppression hearing and is not part of the record in this case. The officers' body-worn camera videos that are part of the record start at the time of the stop, not while the officers were following Mr. Leneo as testified by Officer Wood. Those videos do not show any of Mr. Leneo's driving prior to his stop. Officer Wood testified that Mr. Leneo engaged in evasive driving. Contrary to the trial court's finding, evidence was introduced that Mr. Leneo engaged in evasive driving and there is no video evidence that contradicts the officer's testimony and supports the trial court's findings.

{¶28} The trial court relied on *State v. Kessler*, 53 Ohio St.2d 204, 209 (1978) for the proposition that, in addition to furtive movements, other factors such as police knowledge of recent burglaries in the area, police knowledge of criminal involvement by the driver of the automobile, and the failure of the driver to produce a driver's license or identification must be present to support the officer's search of a vehicle.[1] The trial court found that other than alleged furtive movements,

---

[1] We note that on appeal neither party has challenged the trial court's reliance on *Kessler*. *Kessler* considered a probable cause search and the officer's belief that the vehicle contained contraband that the occupants were attempting to conceal and not a protective sweep for officer safety. *Id.* at 209. *Kessler* was decided prior to *Long*, 463 U.S. 1032 and its factual setting is distinguishable from a protective sweep. The United States Supreme Court in *Long* extended *Terry* to protective searches of vehicles. *Id.* at 1049. The officer testified in this case that he conducted

no additional factors as outlined in *Kessler* were present to support the officer's actions in this case. We disagree and conclude that additional factors were present to support a protective search of Mr. Leneo's vehicle.

{¶29} This court addressed a state's appeal from a trial court's judgment granting a motion to suppress in *State v. Wade*, 2012-Ohio-4255 (9th Dist.). The officers testified in *Wade* that they saw Mr. Wade looking back and reaching down as if he was shoving something between his legs or under the seat as they approached the vehicle. *Id.* at ¶ 12, 15. There was also testimony that Mr. Wade "looked 'very nervous[,]'" "appeared to be 'breathing heav[ily][,]'" and that he was "hesitant" to comply with the officers. *Id.* at ¶ 13, 15. These factors made the officers "more on edge." *Id.* at ¶ 15.

{¶30} The officers discovered a weapon where Mr. Wade had been seated in the vehicle. *Id.* at ¶ 13, 16. Mr. Wade moved to suppress this evidence. *Id.* at ¶ 2. The trial court granted the motion to suppress evidence and the state appealed. This Court reversed the trial court's judgment, concluding that the trial court erred in granting the motion to suppress. *Id.* at ¶ 20.

{¶31} This Court concluded in *Wade* that, "[w]hile the trial court's analysis focused on purported inconsistencies in the officers' testimony," the facts in the record established that "it was reasonable for the officers to conduct a protective sweep for officer safety." *Id.* at ¶ 20. The facts in the record included testimony that: as the officers approached the vehicle, they observed Mr. Wade "making movements consistent with someone attempting to conceal a weapon[;]" Mr. Wade "appeared to be 'very nervous'" and was "breathing heavily[;]" Mr. Wade was hesitant to comply

---

a protective sweep due to his concern for officer safety. The standard set forth in *Long* is applicable to the protective sweep in this case.

with officer requests; and an occupant of the vehicle was placed under arrest. *Id.* We held in *Wade* that:

> [i]n light of the facts available to the officers . . . , a limited search of the area underneath [Mr.] Wade's seat was a reasonable protective measure given that [Mr.] Wade would have otherwise been permitted to return to the [vehicle] at the conclusion of the traffic stop where he could have regained immediate control of a weapon.

*Id.*, citing *Long,* 463 U.S. at 1049 (holding that a search of the passenger compartment of a vehicle is permissible where officer has reasonable belief the suspect is dangerous and may gain immediate control of weapons); *State v. Broughton*, 2012-Ohio-2526, ¶ 37 (10th Dist.) (court held that a protective search was reasonable as a preventative measure when the occupants were temporarily removed from the vehicle and would ultimately be permitted to return).

**{¶32}** We conclude that the trial court's factual findings that the body worn camera footage contradicts the officer's testimony and that there is no credible evidence to support the officer's testimony that he observed furtive movements are not based on competent, credible evidence. Similar to *Wade*, the record in this case includes testimony that Mr. Leneo engaged in evasive driving; it was late at night, and the incident occurred in a high-crime area; Officer Wood observed Mr. Leneo making furtive movements; and Mr. Leneo was nervous and breathing heavily. Based on the record before this Court, we conclude that the limited search of Mr. Leneo's vehicle was a reasonable protective measure. The protective search was reasonable considering the facts available to the officer and given that Mr. Leneo "would have otherwise been permitted to return to [his vehicle] at the conclusion of the traffic stop where he could have regained control of a weapon." *Wade* at ¶ 20; *Long*, 463 U.S. at 1049; *Broughton*, at ¶ 37 (10th Dist.)

**{¶33}** For the reasons set forth above, we conclude that the trial court erred in granting Mr. Leneo's motion to suppress. The State's sole assignment of error is, accordingly, sustained.

III.

{¶34} The State's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

JOSEPH SHELL, Attorney at Law, for Appellee.